REC/WED

U.S. District Court
Wisconsin Eastern

MAY 1 4 2026

FILED
Clerk of Court

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

Green Bay Division

---

Jay Colton Weston Langley,

      Plaintiff

v.

      Case No. __26-CV-854__

Damian Carmona

      Defendant

---

## COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

## JURY TRIAL DEMANDED

---

To: Damian Carmona

      2016 S. 26th Street

      Milwaukee, WI. 53204

      NOW COMES the Plaintiff, Jay C. W. Langley, in propria persona, hereby alleges and shows the Court the following as and for a cause of action against the defendant, Damian Carmona, et al:

## INTRODUCTION

Plaintiff, Jay Colton Weston Langley, brings this civil action to redress a series of intentional torts, fraudulent inducements, coercive conduct, threats of violence, and exploitative labor practices committed by Defendants Damian Carmona and his wife, and threats of violence by Damian Carmona and Damian Carmona Jr. a/k/a "King Wolf."

Page **1** of **21**

This action arises from Defendants' deliberate scheme to recruit, manipulate, and exploit Plaintiff for extensive construction labor under false pretenses; to deprive him of agreed-upon compensation; to coerce continued labor through threats, intimidation, and psychological pressure; and to place Plaintiff and his fiancée in dangerous, degrading, and life-threatening conditions.

Defendants' conduct escalated into criminal threats, gang-related intimidation, and the brandishing of a firearm at Plaintiff, causing him to fear imminent death or great bodily harm. Defendants' actions constitute intentional torts, fraud, exploitation, unjust enrichment, theft by false representation, coercion, and other actionable misconduct under federal and Wisconsin law.

Plaintiff seeks compensatory, non-economic, and punitive damages; declaratory and injunctive relief; and any additional remedies the Court deems just and proper.

## NATURE OF ACTION

This is a civil action arising from Defendants' intentional torts, fraudulent inducement, coercive labor practices, threats of violence, and exploitation of Plaintiff for uncompensated construction labor. Plaintiff seeks redress under federal and Wisconsin law for intentional misconduct including, but not limited to, fraud, unjust enrichment, theft by false representation, coercion, intimidation, and the intentional infliction of severe emotional, financial, and physical harm.

Defendants' conduct further involved gang-related threats, the brandishing of a firearm, and actions that placed Plaintiff and his fiancée in imminent fear of death or great bodily harm. Plaintiff seeks compensatory, non-economic, and punitive damages; declaratory and injunctive relief; and all other remedies available at law or in equity.

## JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000, exclusive of interest

and costs, and the parties are citizens of different counties within the State of Wisconsin.

2. This Court also has jurisdiction under 28 U.S.C. § 1331 to the extent Plaintiff asserts claims involving federal questions, including matters relating to federal labor standards, federal criminal threats implicating interstate concerns, and conduct affecting federally protected rights.

3. The Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise out of the same nucleus of operative facts as the federal claims and form part of the same case or controversy.

4. Personal jurisdiction exists over all Defendants because they reside in Wisconsin, conduct substantial activities within Wisconsin, and committed the acts and omissions giving rise to this action within the State of Wisconsin.

5. Venue is proper in the Eastern District of Wisconsin under 28 U.S.C. § 1391(b)(1)–(2) because:

6. Defendants reside in this District;

7. A substantial part of the events, transactions, threats, and injuries giving rise to this action occurred in this District; and

8. The harm to Plaintiff was suffered within this District.

PARTIES

1. Plaintiff, Jay Colton Weston Langley, is an adult resident of Brown County, Wisconsin, and a citizen of the United States. At all times relevant, Plaintiff

performed labor, management, and construction services for Defendants in Milwaukee County, Wisconsin. And his office is located at 419 Donald Driver Way, Suite 240, Green Bay, Wisconsin 54303.

2. Defendant, Damian Carmona, is an adult resident of Milwaukee County, Wisconsin. Upon information and belief, he is a naturalized or permanent resident originally born in Culiacán, Sinaloa, Mexico. He may be served at his residence located at 2016 South 26th Street, Milwaukee, Wisconsin 53204. Defendant is sued in his individual capacity for intentional torts, fraudulent conduct, coercive labor practices, and threats of violence.

3. Defendant, Damian Carmona Jr., a/k/a "King Wolf," is an adult resident of Milwaukee County, Wisconsin, residing at 2016 South 26th Street, Milwaukee, Wisconsin 53204. Upon information and belief, he is affiliated with the Milwaukee chapter of the Latin Kings street gang and participated in threats, intimidation, and the brandishing of a firearm toward Plaintiff. He is sued in his individual capacity.

4. Defendant, Jane Doe Carmona, is an adult resident of Milwaukee County, Wisconsin, residing at 2016 South 26th Street, Milwaukee, Wisconsin 53204 believed to be the spouse of Defendant Damian Carmona. She participated in the management, direction, and coercive control of the construction project and contributed to the exploitation and mistreatment of Plaintiff. Her true legal name is presently unknown to Plaintiff. She is sued in her individual capacity.

5. At all times relevant, each Defendants acted individually and in concert with one another, and each is responsible for the acts, omissions, threats, and injuries described herein. They acted jointly and severally, and in tandem.

6. The defendants are liable , jointly and severally.

STATEMENT OF FACTS

A. Overview of Defendants' Scheme

Defendants Damian Carmona, ane Doe Carmona engaged in a coordinated course of conduct designed to recruit, manipulate, and exploit Plaintiff for uncompensated labor, financial extraction, and coercive control. Their actions were deliberate, organized, and executed through repeated acts of fraud, intimidation, threats, and psychological pressure.

Defendant Damian Carmona induced Plaintiff into a verbal employment agreement by promising lawful compensation, reimbursement of expenses, and the transfer of a motor vehicle and generator. These promises were knowingly false when made and were used to secure Plaintiff's labor under fraudulent pretenses.

Throughout the project, Defendants repeatedly altered the terms of the agreement, imposed additional work, withheld payment, and used escalating threats and coercion to force Plaintiff to continue laboring despite severe financial hardship, sleep deprivation, and physical exhaustion.

Defendants' conduct was not isolated or accidental. It involved repeated acts of deception, exploitation of vulnerable workers, manipulation of undocumented laborers, and the use of gang-affiliated intimidation to silence complaints and prevent Plaintiff from seeking lawful remedies.

Defendant Damian Carmona Jr., a known member of the Latin Kings street gang, under the instruction of Damian Carmona, participated in the scheme by threatening Plaintiff with violence, including brandishing a firearm and issuing gang-coded threats intended to instill fear of death or great bodily harm.

Defendants' actions caused Plaintiff severe financial loss, emotional distress, physical deterioration, and exposure to life-threatening danger. Their conduct constitutes a pattern of intentional wrongdoing carried out through coordinated acts of fraud, coercion, intimidation, and threats.

B. The Employment Agreement and Initial Fraud

On or around August 11, 2025, Defendant Damian Carmona approached Plaintiff with an offer of temporary employment to convert the front porch ceiling/roof of Defendants' residence into an upper porch. Defendant represented that he and his wife were seeking someone to manage and perform the work and that Plaintiff would be provided with adequate assistance, tools, materials, and support.

Defendant stated that he had multiple workers available to assist Plaintiff and that these workers would handle demolition, cleanup, dumping, and other labor tasks, while Plaintiff would supervise, train, and manage the project. Defendant represented that Plaintiff would not be financially responsible for labor costs, materials, or expenses.

Defendant expressly promised Plaintiff compensation consisting of:

(a) $13,000 in cash,

(b) one new generator, and

(c) a black 2003 Chevrolet Silverado 1500 2WD (VIN 2GCEK19V331211092).

These promises were material to Plaintiff's acceptance of the agreement.

Defendant further represented that he would pay for all food, drinks, gas, materials, and incidental expenses associated with the project, and that Plaintiff would be reimbursed for any out-of-pocket costs incurred during the course of the work.

Plaintiff relied on these representations in good faith and accepted the agreement, believing Defendant to be acting honestly and intending to fulfill his obligations. Plaintiff began work immediately, performing labor, management, and training duties consistent with the terms Defendant described.

At the time these promises were made, Defendant had no intention of honoring them. Defendant's statements were knowingly false, designed to induce Plaintiff into performing substantial labor without compensation, and to place Plaintiff in a position of financial dependency and vulnerability.

Defendant's fraudulent inducement was the first step in a broader pattern of exploitation, coercion, and intimidation that unfolded over the course of the project. Defendant repeatedly altered the terms of the agreement, imposed additional work, and withheld payment to maintain control over Plaintiff and extract further labor.

Plaintiff would not have entered into the agreement, nor performed the extensive labor described herein, had he known that Defendant's promises were false, that reimbursement would be withheld, or that Defendants intended to use threats, manipulation, and gang-related intimidation to prevent Plaintiff from asserting his rights.

## C. Expansion of Work, Exploitation, and Withholding of Payment

After Plaintiff began work in reliance on Defendant's promises, Defendant unilaterally expanded the scope of the project far beyond the original agreement. Defendant repeatedly added new tasks, structural modifications, and additional labor demands without Plaintiff's consent and without offering additional compensation.

The work originally agreed upon was expected to take three to four days. Due to Defendant's continual additions, changes, and interference, the project extended to over two weeks, during which Plaintiff worked long hours under increasingly difficult conditions.

Defendant repeatedly inserted himself into the management of the project, issuing contradictory, unsafe, or improper instructions to Plaintiff and other workers. Defendant's wife also intervened, directing workers to perform tasks incorrectly or unsafely. When these errors caused delays or hazards, Defendants blamed Plaintiff and required him to correct the mistakes.

Defendant's workers included individuals with varying levels of skill and reliability. Several workers—Sergio, Chewy, Luis, Honduras, Ricardo, and Pete—walked off the job at different times because Defendant refused to pay them for their labor. Plaintiff was unable to continue paying them out of pocket because Defendant had not reimbursed him as promised.

Defendant required Plaintiff to pay all workers out of pocket, promising reimbursement. Plaintiff paid wages, purchased materials, bought food and drinks, covered gas expenses, and handled other project-related costs. Defendant never reimbursed Plaintiff for any of these expenses.

Plaintiff repeatedly requested reimbursement during the project. Defendant responded with excuses such as "I didn't have time to go to the bank," "I'll pay you tomorrow," or "I have something important to do first," none of which were true. These statements were used to delay payment and maintain Plaintiff's financial dependence.

When Defendant's wife was present during reimbursement requests, she belittled Plaintiff, stating that he "didn't do anything" and that "the other guys did all the work," despite Plaintiff managing, training, and performing the administration of the labor, including a significant portion of the construction itself. Her statements were intended to undermine Plaintiff's confidence and justify withholding payment.

Defendant's conduct placed Plaintiff in a state of progressive financial exhaustion. Plaintiff depleted his personal funds paying workers, purchasing materials, and covering daily expenses. Defendant was aware of Plaintiff's financial vulnerability and used it to pressure Plaintiff into continuing work without compensation.

Defendant repeatedly emphasized that Plaintiff would "lose everything" if he did not finish the project, knowing Plaintiff had not been paid and had invested his own money. Defendant used this leverage to coerce Plaintiff into continuing labor under increasingly exploitative conditions.

As Plaintiff's financial situation deteriorated, Defendant offered temporary sleeping arrangements on the concrete floor of his restaurant, Redd's Pastapizzaria located at 1408 W. Windlake Ave., Milwaukee, WI 53215, and later in his garage or driveway. These offers were made only after Plaintiff became financially desperate due to Defendant's refusal to pay him.

Defendant's actions were calculated to keep Plaintiff dependent, exhausted, and unable to leave the project. By withholding payment, expanding the work, and manipulating Plaintiff's financial circumstances, Defendant created a coercive environment in which Plaintiff felt compelled to continue working despite worsening conditions.

Defendant's pattern of withholding payment, altering the agreement, and exploiting Plaintiff's labor was not accidental. It was part of a deliberate scheme to obtain substantial construction work at little to no cost, using deception, manipulation, and coercive pressure to control Plaintiff and extract labor.

D. Financial Deprivation, Housing Instability, and Coercive Control

As Defendant continued withholding all promised compensation and reimbursement, Plaintiff's financial condition deteriorated rapidly. Plaintiff had exhausted his personal funds paying workers, purchasing materials, and covering daily expenses that Defendant had promised to reimburse. Defendant was fully aware of Plaintiff's worsening financial distress.

Defendant's refusal to pay Plaintiff or reimburse expenses left Plaintiff unable to secure basic necessities, including food, gas, and shelter. Plaintiff and his fiancée became increasingly vulnerable, lacking the financial means to obtain safe lodging or meet essential needs.

Exploiting this vulnerability, Defendant proposed that Plaintiff and his fiancée sleep on the concrete floor of Defendant's restaurant, Redd's Pastapizzaria, located at 1408 W. Windlake Avenue in Milwaukee. Defendant stated he would provide an air mattress and implied this arrangement would continue until the project was completed and Plaintiff was paid.

Plaintiff and his fiancée reluctantly accepted the offer out of necessity, as they were hungry, exhausted, and had no safe alternative due to Defendant's ongoing refusal to pay them. Plaintiff's acceptance was not voluntary but compelled by the financial deprivation Defendant had created.

Unbeknownst to Plaintiff, the restaurant space was under commercial lease to an individual known as "Redd." When Redd and a female companion discovered Plaintiff and his fiancée inside the premises, they reacted with shock and hostility, creating a volatile and frightening confrontation. Plaintiff and his fiancée feared for their safety and immediately left the premises.

Defendant later admitted that Redd had paid rent and was not expected to return for two weeks, contradicting his earlier statements. Defendant then offered Plaintiff and his fiancée the option to sleep on the concrete floor of his garage, or in their vehicle parked in Defendant's driveway.

On multiple occasions, Plaintiff and his fiancée were forced to sleep in their vehicle on the street, or in Defendant's driveway. These conditions were cold, unsafe, and degrading. Defendant's offers of temporary shelter were not acts of generosity but were made only after Plaintiff had been financially incapacitated by Defendant's refusal to pay him, and in furtherance of the overall scheme in defendant's favor.

At one point, while Defendant and his family were away at Wisconsin Dells, Defendant allowed Plaintiff and his fiancée to sleep inside his home on the condition that they "watch the house" to prevent alleged theft by other workers. Plaintiff agreed out of necessity, as he and his fiancée had no safe alternative.

The combination of sleep deprivation, inadequate nutrition, and constant financial stress caused Plaintiff to experience severe physical and cognitive decline, including extreme fatigue, impaired concentration, memory problems, irritability, and muscle weakness. Plaintiff became increasingly enervated and mentally exhausted.

Despite Plaintiff's deteriorating condition, Defendant continued to pressure him to work faster and harder, repeatedly threatening nonpayment if Plaintiff did not meet Defendant's uncommunicated expectations. Defendant's statements created a constant sense of urgency and fear that Plaintiff would lose all compensation, including reimbursement, if he stopped working.

Defendant's conduct created a coercive environment in which Plaintiff felt trapped, financially incapacitated, and unable to leave the project. Defendant's withholding of payment, manipulation of Plaintiff's living conditions, and exploitation of Plaintiff's vulnerability were deliberate acts designed to maintain control and extract further labor.

Defendant's actions caused Plaintiff and his fiancée to experience significant emotional distress, fear, instability, and humiliation. The deprivation of basic necessities and the unsafe living conditions were direct consequences of Defendant's intentional refusal to pay Plaintiff for his labor and expenses.

E. Escalation, Threats, and Gang-Related Intimidation

As Plaintiff's financial hardship worsened and Defendant continued refusing to pay the agreed-upon compensation, the relationship between the parties deteriorated. Plaintiff made repeated attempts to resolve the matter peacefully and requested payment for the work he had completed.

On or about September 15, 2025, Plaintiff contacted Defendant by phone to discuss payment and to request the generator and remaining compensation. Plaintiff was driving in Milwaukee at the time and, by coincidence, was near Defendant's residence.

During this call, Defendant became increasingly hostile and made statements indicating that Plaintiff should not return to his property or attempt to collect payment in person. Defendant referenced family members and made statements that caused Plaintiff to fear for his safety if he approached the residence.

Plaintiff, concerned by the tone and content of the call, attempted to leave the area. As he drove southbound away from Defendant's residence, Plaintiff observed an individual later identified as Damian Carmona Jr., who approached Plaintiff's vehicle in an aggressive manner and made threatening verbal statements.

Plaintiff perceived the encounter as dangerous and immediately left the area to protect himself and his passengers. Plaintiff drove toward a more populated location where he believed he would be safer and where witnesses were present.

Plaintiff subsequently reported the incident to the City of Milwaukee Police Department, which documented the matter under Case No. C2602050091.

Plaintiff later learned that Defendant's adult sons, including Damian Carmona Jr. and Jeffrey T. Carmona, were associated with a known street gang. Plaintiff also learned that these individuals had reputations for aggressive behavior. This information heightened Plaintiff's fear and contributed to his belief that the threats made toward him were credible.

The escalation of hostility, combined with the involvement of individuals known for violent conduct, caused Plaintiff to experience significant emotional distress, fear, and anxiety. Plaintiff believed that attempting to collect payment or assert his rights could place him and his fiancée in danger.

Defendant's conduct — including the threatening statements, the involvement of family members, and the intimidating encounter near Defendant's residence — created an environment in which Plaintiff reasonably feared retaliation for attempting to recover his unpaid compensation.

F. The Aftermath, Vehicle Transfer, and Continuing Harm

Following the escalation of threats and Plaintiff's report to law enforcement, Defendant contacted Plaintiff and stated that Plaintiff could retrieve the truck and its title. Plaintiff, still owed the full agreed-upon compensation and facing significant financial hardship, accepted the transfer because it was the only compensation Defendant had offered.

Defendant represented to Plaintiff that the truck had been fully serviced and was in sound mechanical condition. Defendant stated that he had replaced the brakes, rotors, brake lines, and calipers, and had performed a full tune-up and oil change. Defendant's associate, who had acted as a mechanic during the project, affirmed these statements.

Relying on these representations, Plaintiff later sold the vehicle. Shortly thereafter, the purchaser informed Plaintiff that the truck had multiple mechanical issues and was not in the condition Defendant had described. The purchaser demanded reimbursement and compensation, asserting that the vehicle was unsafe to operate.

Plaintiff reasonably believed the purchaser's statements to be accurate and credible. Defendant's misrepresentations regarding the vehicle's condition placed Plaintiff at risk of financial liability, reputational harm, and further emotional distress.

Defendant's refusal to pay Plaintiff the agreed-upon $13,000, the generator, and reimbursement for all out-of-pocket expenses left Plaintiff in a state of severe financial instability. Plaintiff had depleted his savings, incurred additional expenses, and suffered significant economic loss as a direct result of Defendant's conduct.

Plaintiff also experienced ongoing emotional distress, anxiety, and fear due to the threats made by Defendant and his family members. Plaintiff believed that attempting to pursue payment or assert his rights could expose him and his fiancée to further retaliation.

Defendant's actions caused lasting harm to Plaintiff's financial security, emotional well-being, and personal safety. The consequences of Defendant's conduct continued long after the project ended, affecting Plaintiff's ability to work, maintain stability, and recover from the exploitation he endured.

The events described above form part of a continuous pattern of conduct involving deception, coercion, intimidation, and exploitation, resulting in substantial harm to Plaintiff.

## CAUSES OF ACTION (FEDERAL CLAIMS — HIGH-LEVEL)

Count 1 — Civil RICO (18 U.S.C. § 1962) — High-Level Allegations Only

Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

Plaintiff alleges, at a high level, that Defendants engaged in a pattern of conduct involving repeated acts of deception, intimidation, threats, and coordinated actions that caused harm to Plaintiff's property, finances, and personal security.

Plaintiff alleges that the conduct described in the Statement of Facts involved multiple participants acting in concert, including family members associated with a known street organization, and that these coordinated actions contributed to the harm Plaintiff suffered.

Plaintiff alleges that the conduct involved repeated acts over a period of time, including fraudulent inducement, withholding of compensation, coercive pressure, and threatening behavior, which collectively caused significant financial and emotional injury.

Plaintiff seeks all remedies available under federal law for injuries caused by the alleged pattern of conduct, including compensatory damages, treble damages where permitted, and any other relief the Court deems appropriate.

Count 2 — Federal Coercion / Forced-Labor-Related Allegations (High-Level Reference Only)

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges, at a high level, that Defendants' conduct involved coercive pressure, threats, and manipulation that caused Plaintiff to continue working under conditions of financial deprivation and fear.

Plaintiff alleges that Defendants knowingly used Plaintiff's financial vulnerability, lack of payment, and threats of retaliation to compel continued labor.

Plaintiff seeks all remedies available under federal law for injuries arising from coercive or exploitative labor practices, including compensatory damages and any additional relief deemed appropriate by the Court.

Count 3 — Federal Fraud-Related Allegations (High-Level Reference Only)

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges that Defendants made material misrepresentations regarding payment, reimbursement, and the condition of the vehicle transferred to Plaintiff, and that these statements were knowingly false when made.

Plaintiff alleges that he relied on these representations to his detriment, resulting in substantial financial loss and ongoing harm.

Plaintiff seeks all remedies available under federal law for injuries arising from fraudulent conduct, including compensatory damages and any other relief the Court deems just.

CAUSES OF ACTION — WISCONSIN STATE CLAIMS (HIGH-LEVEL)

Count 4 — Fraud / Intentional Misrepresentation (Wisconsin Common Law)

Plaintiff realleges and incorporates all preceding paragraphs as though fully set forth herein.

Plaintiff alleges that Defendants made material representations regarding payment, reimbursement, and the condition of the vehicle transferred to Plaintiff, and that these statements were knowingly false when made.

Plaintiff alleges that he reasonably relied on these representations when agreeing to perform labor, purchase materials, pay workers, and accept the vehicle as partial compensation.

Count 5 — Theft by False Representation (Wis. Stat. § 943.20) — Civil Allegations Only

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges that Defendants obtained Plaintiff's labor, money, and resources through false statements, promises, and omissions regarding payment and reimbursement.

Plaintiff alleges that Defendants' conduct resulted in the wrongful taking of Plaintiff's property, including labor value, out-of-pocket expenditures, and wages paid to other workers.

Plaintiff seeks civil remedies available for injuries arising from conduct involving false representation and wrongful deprivation of property.

Count 6 — Unjust Enrichment (Wisconsin Common Law)

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges that Defendants received substantial benefits from Plaintiff's labor, management, materials, and expenditures without providing the promised compensation.

Plaintiff alleges that it would be inequitable for Defendants to retain the benefits of Plaintiff's work without payment.

Plaintiff seeks restitution and all equitable remedies available under Wisconsin law.

Count 7 — Exploitation / Coercive Conduct (Wisconsin Common Law)

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges that Defendants knowingly exploited his financial vulnerability, lack of payment, and need for shelter to compel continued labor under coercive conditions.

Plaintiff alleges that Defendants' conduct caused him significant financial, emotional, and physical harm.

Plaintiff seeks all remedies available under Wisconsin law for injuries arising from coercive and exploitative conduct.

Count 8 — Intentional Infliction of Emotional Distress (Wisconsin Common Law)

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges that Defendants engaged in extreme and outrageous conduct, including threats, intimidation, and deliberate manipulation of Plaintiff's financial and living conditions.

Plaintiff alleges that Defendants' conduct caused him severe emotional distress, fear, anxiety, and ongoing psychological harm.

Plaintiff seeks all remedies available under Wisconsin law for intentional infliction of emotional distress.

Count 9 — Negligent Misrepresentation (Wisconsin Common Law)

(Included to preserve alternative theories)

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges that, in the alternative, Defendants made statements regarding payment, reimbursement, and vehicle condition without exercising reasonable care or competence.

Plaintiff alleges that he relied on these statements to his detriment and suffered financial harm as a result.

Plaintiff seeks all remedies available under Wisconsin law for negligent misrepresentation.

Count 10 — Wisconsin Organized Crime Control Act (WOCCA) — High-Level Allegations Only

Plaintiff realleges and incorporates all preceding paragraphs.

Plaintiff alleges, at a high level, that Defendants' conduct involved coordinated actions by multiple individuals, including family members, and that these actions formed part of a pattern of behavior that caused Plaintiff financial and emotional harm.

Plaintiff alleges that the conduct described in the Statement of Facts involved repeated acts of deception, intimidation, and coercion that contributed to the harm he suffered.

Plaintiff seeks all remedies available under Wisconsin law for injuries arising from the alleged pattern of conduct.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Jay Colton Weston Langley respectfully requests that this Court enter judgment in his favor and against all Defendants, jointly and severally, and award the following relief:

Compensatory Damages

Case 1:26-cv-00854-BBC    Filed 05/14/26    Page 18 of 21    Document 1

Award compensatory damages in an amount to be determined at trial, including but not limited to:

unpaid labor value;

reimbursement of all out-of-pocket expenses;

financial losses arising from the vehicle transfer;

consequential damages;

emotional distress damages; and

all other losses proximately caused by Defendants' conduct.

Restitution and Disgorgement

Order Defendants to disgorge all benefits unjustly obtained from Plaintiff's labor, expenditures, and services, and award restitution in an amount to be determined at trial.

Statutory Damages

Award statutory damages where permitted under Wisconsin law, including damages available for conduct involving false representation, coercive practices, and other actionable misconduct.

Treble Damages Where Authorized

Award treble damages to the extent permitted under federal law for injuries arising from the alleged pattern of conduct.

## Punitive Damages

Award punitive damages in the amount of $600,000 to punish and deter Defendants' intentional, malicious, and reckless conduct.

## Declaratory Relief

Issue a declaration that Defendants' conduct was wrongful, unlawful, and in violation of Plaintiff's rights under federal and Wisconsin law.

## Injunctive Relief

Enter appropriate injunctive relief to prevent Defendants from engaging in similar conduct toward Plaintiff or others.

## Pre- and Post-Judgment Interest

Award interest as permitted by law.

## Attorney's Fees and Costs

Award reasonable attorney's fees and costs where authorized by statute or equity, if applicable.

## Any Other Relief the Court Deems Just and Proper

Grant such additional relief as the Court finds appropriate under the circumstances.

## JURY DEMAND

Plaintiff Jay Colton Weston Langley hereby demands a trial by jury on all issues so triable as a matter of right under the Constitution and laws of the United States and the State of Wisconsin.

## VERIFICATION

I, Jay Colton Weston Langley, declare under penalty of perjury under the laws of the United States of America and the State of Wisconsin that I have read the foregoing Complaint, and that the factual statements contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on this 14th day of _May_, 2026, in Green Bay, Wisconsin.

Jay Colton Weston Langley, Plaintiff

419 Donald Driver Way, Suite 240

Green Bay, WI 54303

(920) 713-6931

Langley_LitigationSpecialist@outlook.com