# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAY COLTON WESTON LANGLEY,

        Plaintiff,

    v.                Case No. 26-CV-854

DAMIAN CARMONA,

        Defendant.

## DECISION AND ORDER

Currently pending before the court is Jay Colton Weston Langley's Request to Proceed in District Court without Prepaying the Filing Fee. (ECF No. 2.) Having reviewed Langley's request, the court concludes that Langley lacks the financial resources to prepay the fees and costs associated with this action. Therefore, Langley's Request to Proceed in District Court without Prepaying the Filing Fee will be granted. However, because the court is granting Langley's Request to Proceed in District Court without Prepaying the Filing Fee, it must determine whether the complaint is legally sufficient to proceed. 28 U.S.C. § 1915.

## I.    Legal Standard

Congress sought to ensure that no citizen would be denied the opportunity to commence a civil action in any court of the United States solely due to poverty. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Adkins v. E. I. DuPont de Nemours &*

*Co.*, 335 U.S. 331, 342 (1948)). However, Congress also recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To balance these competing concerns, before the court can allow a plaintiff to proceed in forma pauperis it must determine that the case neither (1) is frivolous or malicious, (2) fails to state a claim upon which relief may be granted, nor (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). Thus, although "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), a pro se complaint must meet these minimal standards before the court shall grant a plaintiff leave to proceed in forma pauperis.

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton*, 504 U.S. at 31; *Neitzke*, 490 U.S. at 325. Although factual allegations must be weighed in favor of the plaintiff, that does not mean that the court is required to accept without question the truth of the plaintiff's allegations. *Denton*, 504 U.S. at 32. Thus, a court may dismiss a claim as frivolous if it is "clearly baseless," "fanciful," "fantastic," "delusional," "irrational," "wholly incredible," or "based on an indisputably meritless legal theory." *Id.* at 32-33. A court may not dismiss a claim as frivolous simply because "the plaintiff's allegations are unlikely." *Id.*

2

A claim might not be frivolous or malicious but nonetheless fail to state a claim upon which relief may be granted and, therefore, be subject to dismissal. In determining whether a plaintiff has stated a claim, under 28 U.S.C. § 1915(e)(2)(B)(ii) the court applies the same well-established standards applicable to a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *DeWalt v. Carter*, 224 F.3d 607, 611 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir. 2020).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although the allegations in a complaint need not be detailed, a complaint "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks, citation, and brackets omitted). The complaint must be sufficiently detailed "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (quotation marks and ellipses omitted).

If the complaint contains well-pleaded non-frivolous factual allegations, the court should assume the veracity of those allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

With the standards set forth in 28 U.S.C. § 1915(e)(2) in mind, the court turns to the allegations raised in the plaintiff's complaint, which the court accepts as true at this stage.

## II.    Background

Langley brings this action against Damian Carmona for "intentional torts, fraudulent conduct, coercive labor practices, and threats of violence." (ECF No. 1 at 4.) In his complaint, Langley further names Carmona's wife for "exploitation and mistreatment," as well as what the court assumes is Carmona's son, Damian Carmona Jr., for "threats, intimidation, and the brandishing of a firearm." (ECF No. 1 at 4.)

It appears that Langley was hired by Carmona to construct a porch on the second floor of Carmona's residence. (ECF No. 1 at 5.) Carmona allegedly promised to compensate Langley in the form of $13,000, "one new generator," and a "black 2003 Chevrolet Silverado."   (ECF No. 1 at 5.) Langley understood that he would be responsible for the supervision, training, and management of the project, but that Carmona had "multiple workers" to "handle demolition, cleanup, dumping, and other labor tasks." (ECF No. 1 at 6.) He further understood that he was not financially responsible for labor costs, materials, or expenses, and that he would be reimbursed

4

for all food, drinks, gas, and incidental expenses incurred while working. (ECF No. 1 at 6.)

The project's timeline allegedly ballooned from four days to two weeks. (ECF No. 1 at 7.) Langley, thinking he would be reimbursed, "depleted his personal funds" to pay the wages of those working for him, purchase materials, cover gas expenses, and buy food and drinks. (ECF No. 1 at 8.) When Langley asked Carmona to reimburse him, however, Carmona "responded with excuses" (ECF No. 1 at 8) and allegedly threatened nonpayment if Langley did not finish the job (ECF No. 1 at 10). At some point, Langley could no longer afford lodging and resorted to temporary spots provided by Carmona. (ECF No. 1 at 9-10.)

The complaint does not make clear how the project concluded or what amount Carmona paid Langley upon completion. Langley states, however, that on or about September 15, 2025, Langley found himself in Carmona's neighborhood and called him "to discuss payment and to request the generator and remaining compensation." (ECF No. 1 at 11.) Carmona allegedly responded with threatening statements indicating that Langley should never return to his property. (ECF No. 1 at 21.) Langley further alleges that Carmona's son, Damian Carmona Jr., approached his vehicle and made his own threatening statements. (ECF No. 11 at 21.) Langley apparently reported this incident to the Milwaukee Police Department. (ECF No. 11 at 22.) Soon after, however, Carmona turned over the promised Chevrolet Silverado and title to Langley. (ECF No. 1 at 12.) When Langley sold the truck shortly thereafter, he discovered it was not in the condition Carmona had described. (ECF

No. 1 at 13.) Langley ultimately accuses Carmona of causing lasting harm to his financial security, emotional well-being, and personal safety. (ECF No. 1 at 13.)

### III. Analysis

Federal courts are courts of limited jurisdiction. Thus, subject-matter jurisdiction becomes the first issue in any case. *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). Generally, to bring a lawsuit in federal court, the plaintiff must bring a claim arising under federal law, 28 U.S.C. § 1331, or must sue citizens of a different state for an amount that exceeds $75,000, 28 U.S.C. § 1332. A suit brought under the diversity statute must have "complete diversity," meaning the plaintiff cannot have citizenship in common with any of the defendants. *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 636 (7th Cir. 2021).

Here, the court does not have subject-matter jurisdiction under 28 U.S.C. § 1332 because complete diversity is "destroyed." *Page*, 2 F.4th at 636. Langley states that "the parties are citizens of different counties *within* the State of Wisconsin." (ECF No. 1 at 3) (emphasis added). He further lists residing addresses in Wisconsin for all parties involved. (ECF No. 1 at 4.) Thus, Langley cannot bring his claim under the diversity statute because all parties are citizens of the same state. *See, e.g., Howell v. Tribune Entm't Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (explaining that complete diversity means "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen").

It is also unclear whether the necessary amount in controversy is satisfied. Although Langley alleges it exceeds $75,000 (ECF No. 1 at 2), he later states that the

verbal contract was for $13,000 in cash, "one new generator," and a black 2003 Chevrolet Silverado (ECF No. 1 at 6). It further appears that Langley was compensated at least in part for the work he completed and that Carmona gave Langley the Chevrolet Silverado. Nevertheless, because the non-diverse parties prevent Langley from bringing his suit under 28 U.S.C. § 1332, the court need not come to a determination about the amount in controversy.

Nor does the court have jurisdiction under 28 U.S.C. § 1331, because Langley has failed to plead a federal question. For a court to exercise federal question jurisdiction, a complaint must establish "that federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983). Langley's complaint asserts claims of fraud, coercion, and a violation of the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. § 1962. (ECF No. 1 at 13-15.) He brings further claims under Wisconsin law of theft by false representation, unjust enrichment, exploitation, intentional infliction of emotional distress, negligent misrepresentation, and a violation of the Wisconsin Organized Crime Control Act. (ECF No. 1 at 15.)

The RICO statute creates a civil cause of action for individuals injured by those who engage in racketeering activity. *See Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021); 18 U.S.C. § 1962(c). "RICO … does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating

organized, long-term, habitual criminal activity." *Gamboa v. Velez*, 457 F.3d 703, 705 (7th Cir. 2006). Thus, to state a claim under 18 U.S.C. § 1962(c), Langley must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity. *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021). "A pattern of racketeering activity consists of at least two violations of a specified list of criminal laws." *Roppo v. Travelers Commer. Ins. Co.*, 869 F.3d 568, 589 (7th Cir. 2017) (citation omitted). Plaintiff must further demonstrate that the two predicate acts pose a threat of continued criminal activity. *See Jennings v. Auto Meter Prods.*, 495 F.3d 466, 473 (7th Cir. 2007) (citing *H.J., Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)). "Consequently, isolated instances of criminal behavior, not presenting at least some threat of future harm, cannot meet § 1962(c)'s continuity element." *Gamboa v. Velez,* 457 F.3d 703, 706 (7th Cir. 2006) (citations omitted); *see also Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 828 (7th Cir. 2016) ("Continuity limits RICO to schemes meant to exist over a period of time, not one-off crimes.").

Langley does not make clear which predicate acts by Carmona form the basis of his RICO claim. But that aside, he also falls short of alleging a pattern of racketeering activity. A plaintiff adequately pleads continuity by "(1) demonstrating a closed-ended series of conduct that existed for such an extended period of time that a threat of future harm is implicit, or (2) an open-ended series of conduct that, while short-lived, shows clear signs of threatening to continue into the future." *Menzies v. Seyfarth Shaw Ltd. Liab. P'ship*, 943 F.3d 328, 337 (7th Cir. 2019). Here, Langley's

complaint does not demonstrate that Carmona's past conduct amounts to a threat of future harm. Although Langley alleges facts that continued over a period of a few weeks to months, the conduct had a natural ending point after Langley completed the porch and received some sort of payment. If Carmona's conduct did violate multiple RICO predicates, it happened in an isolated scheme with no apparent threat of continued criminal activity. *See, e.g., Gamboa v. Velez,* 457 F.3d 703, 710 (7th Cir. 2006) (Finding no RICO claim exists when complaint alleges "a distinct and non-reoccurring scheme with a built-in termination point"); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992) (affirming dismissal of complaint where the "scheme" to not pay the contracted company "had a natural end point: the completion of the [project]"). Because Langley has not sufficiently alleged continuity, he has failed to plead a claim under § 1962(c). *See Uni\*Quality, Inc.*, 974 F.2d at 922 ("This is precisely the type of short-term, closed-ended fraud that … this circuit consistently has held does not constitute a pattern.").

Langley further asserts "federal coercion / forced-labor-related" (ECF No. 1 at 14) and "federal fraud-related" (ECF No. 1 at 15) allegations. But outside of Langley's RICO allegation, the complaint does not establish a  basis to bring those claims in federal court. *See Schmidt v. Fuiks*, 796 F. App'x 316, 317 (7th Cir. 2020) (explaining that fraud arises under state, not federal law); *Rennell v. Rowe*, 635 F.3d 1008, 1014 (7th Cir. 2011) ("We take [Plaintiff] at his word that [Defendant's] actions amounted to economic duress …. But those claims should be pursued through state-law theories of contract and, perhaps, tort—not civil RICO."). Because Langley's

complaint does not invoke federal law, the court cannot exercise jurisdiction pursuant to 28 U.S.C. § 1331 either.

Absent diversity jurisdiction and federal question jurisdiction, Langley's federal claims must be dismissed. As to his remaining state law claims, the usual practice in this circuit is for district courts to dismiss state supplemental claims whenever all federal claims have been dismissed. *See Hagan v. Quinn*, 867 F.3d 816, 830 (7th Cir. 2017) (quoting *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999)). Accordingly, the court will decline to exercise supplemental jurisdiction over Langley's state claims. *See* 28 U.S.C. § 1367(c); *see also Lancaster v. Rehberger*, No. 3:25-cv-01366-NJR, 2026 U.S. Dist. LEXIS 74819, *27-28, at *27-28 (S.D. Ill. Apr. 6, 2026) (finding "no basis apparent from the record to retain jurisdiction over [state law] claims" following dismissal of RICO allegation).

While ordinarily pro se litigants are given an opportunity to amend, *Felton v. City of Chicago*, 827 F.3d 632, 636 (7th Cir. 2016), dismissal of Langley's claims is appropriate because his allegations do not suggest that he can state a claim for relief in federal court. *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) ("Leave to amend need not be granted, however, if it is clear that any amendment would be futile."). Although Langley is foreclosed from proceeding with his suit in federal court, he may wish to pursue his claims in a state forum.

**IT IS THEREFORE ORDERED** that the plaintiff's Request to Proceed in District Court without Prepaying the Filing Fee (ECF No. 2) is **granted**.

10

**IT IS FURTHER ORDERED** that Langley's complaint be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

Dated at Green Bay, Wisconsin this 21st day of May, 2026.

*s/ Byron B. Conway*

BYRON B. CONWAY
United States District Judge

Case 1:26-cv-00854-BBC     Filed 05/21/26     Page 11 of 11     Document 4